UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ORIENT MARITIME LIMITED, a Bangladesh Corporation,

Plaintiff,

v.

SSA INTERNATIONAL, INC., a Washington Corporation; STEVEDORING SERVICES OF AMERICA, INC. n/k/a SSA MARINE, INC., a Washington Corporation; CARRIX, INC., a Washington Corporation; FRS CAPITAL CORP., a Washington Corporation; JON F. HEMINGWAY, a Citizen of Washington; Robert E. WATTERS, a Citizen of Washington; DANIEL FLYNN, a Citizen of Washington; CHARLIE SADOSKI, a Citizen of Washington; ROBERT D. KAPLAN, a Citizen of Washington; and BOGLE & GATES, P.L.L.C. , a Washington Limited Liability Company; and DOES 1 through 100,

Defendants,

ASHFAQUE RAHMAN, a citizen of Bangladesh,

Counterclaim Defendant.

Case No. CV05-1100L

ORDER DENYING MOTION OF COUNTER-DEFENDANT TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This matter comes before the Court on the "Motion of Counter-Defendant Ashfaque Rahman To Dismiss For Lack Of Personal Jurisdiction." Dkt. # 33.[1] This dispute arises from the ultimate failure of a joint venture agreement ("JVA") through which plaintiff Orient Maritime Limited ("OML") and SSA Netherlands B.V. agreed to build and operate a container terminal project in Bangladesh (hereinafter "the Project"). Mr. Rahman is Managing Director of OML, a Bangladeshi shipping corporation, and he, his wife, and his parents own all of OML's outstanding stock. Defendants are companies and individuals engaged in shipping and transportation enterprises around the world, three of which have asserted counterclaims against OML and Mr. Rahman. Mr. Rahman seeks dismissal of the counterclaims for lack of personal jurisdiction.

Defendants have the burden of demonstrating that the Court may exercise personal jurisdiction over Mr. Rahman. Dole Food Company, Inc., 303 F.3d 1104, 1108 (9th Cir. 2002). Because the Court did not hear testimony or make findings of fact, defendants "need only make a prima facie showing of jurisdiction . . . ." Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995). In evaluating Mr. Rahman's jurisdictional contacts, the Court accepts uncontroverted allegations in the counterclaim as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). "Conflicts between the parties over statements contained in affidavits must be resolved in [defendants'] favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

**FACTS**

Mr. Rahman, a Bangladeshi citizen, lives and works in Dhaka, Bangladesh. Although he has traveled to the United States for business and personal matters, he has had limited contacts with Washington. Mr. Rahman owns no property, bank accounts, or business interests in the State of Washington. Nor has he ever, on a personal basis, purchased

---

[1] Having reviewed the submissions of the parties, the Court finds that this matter can be decided on the papers. Mr. Rahman's request for oral argument is, therefore, DENIED.

products/services or entered into a business relationship with a Washington resident. Nevertheless, the counterclaim defendants ask this Court to exercise personal jurisdiction over Mr. Rahman based on his actions and conduct throughout the six-year life of the Project.

In May 1997, Mr. Rahman contacted defendants in Seattle, Washington, about the possibility of pursuing a project to build modern port facilities in Bangladesh. Mr. Rahman was OML's sole negotiator and representative during the formation of the JVA. He was involved in numerous communications with the Seattle-based defendants by e-mail, letters, and telephone, and traveled to Washington in August and November 1997 to pursue the proposed joint venture. Following a period of negotiation and investigation, the JVA was signed in December 1997 by Mr. Rahman on behalf of OML and by Robert Watters on behalf of SSA Netherlands B.V. The JVA contemplated the registration of a new company in Bangladesh that would arrange, finance, construct, and operate container terminals in that country. The Project came to a halt when the High Court Division of the Supreme Court of Bangladesh found that the government of Bangladesh had acted without lawful authority when granting approvals for the Project.

In their counterclaim, defendants assert that Mr. Rahman made various misrepresentations leading up to and following the signing of the JVA. The alleged misrepresentations involved statements of existing fact (such as information regarding the cost of operating the Port of Chittagong and Mr. Rahman's financial resources, as well as requests for reimbursement of joint venture expenses) and statements regarding future conduct (such as the promise to obtain necessary government approvals for the Project). Defendants have asserted counterclaims of fraud, negligent misrepresentation, conversion, and unjust enrichment against both OML and Mr. Rahman.

**DISCUSSION**

"The district court's determination of a party's amenability to suit is made by reference to the law of the state in which it sits." Peterson v. Kennedy, 771 F.2d 1244, 1262 n.12 (9th Cir. 1985). The parties spend a significant portion of their memoranda discussing the

various subsections of Washington's long-arm statute, RCW 4.28.185. The Washington Supreme Court has held, however, that despite the rather narrow language used in the statute, it "extends jurisdiction to the limit of federal due process." Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 771 (1989). Because the long-arm statute is coextensive with the outer limits of federal due process, the Court need determine only whether the exercise of jurisdiction comports with the constitutional requirements. Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994).

In order to exercise jurisdiction over a non-resident under the federal constitution, defendants must show that Mr. Rahman had "certain minimum contacts with [Washington] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Where specific jurisdiction[2] is alleged:

> (1) [t]he nonresident [party] must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which arises out of or results from the [party's] forum-related activities[; and] (3) [e]xercise of jurisdiction must be reasonable.

Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) (citing Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977)). The purpose of the "purposeful availment" requirement is to ensure that a party has sufficient contacts with the forum state to warrant his being haled into court there: "random, fortuitous, or attenuated contacts" are not enough to satisfy the constitutional requirements. Ziegler, 64 F.3d at 473 (internal quotation marks omitted),

Although there is some disagreement on the issue, we apply different purposeful

---

[2] Defendants have not argued that general jurisdiction over Mr. Rahman exists in this case.

> availment tests to contract and tort cases. Consistent with the Supreme Court's holding in Burger King [Corp. v. Rudzewicz, 471 U.S. 462 (1985)], merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. In tort cases, however, jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state.

Ziegler, 64 F.3d at 473 (citations omitted). Defendants have alleged counterclaims that sound in tort and in contract. See Auburn Mech., Inc. v. Lydig Constr., Inc., 89 Wn. App. 893, 903-04 (1998) (although an action for unjust enrichment is an equitable proceeding, it is based on a promise, implied in law, and is therefore contractual in nature). Mr. Rahman's jurisdictional contacts are considered in light of both types of claims.

**1. Contract Claims**

A party purposefully avails himself of the benefits of the forum if he has deliberately "engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum." Burger King, 471 U.S. at 475-76 (citations omitted). The mere existence of a contract is insufficient to justify the exercise of jurisdiction over a foreign defendant: the relationship between the forum and the course of negotiations, the terms of the contract, and the anticipated future consequences must be considered. Burger King, 471 U.S. at 479.

Mr. Rahman argues that he cannot be hauled into Washington to respond to defendants' contract claim because he was not a party to the JVA and because almost all of the duties and actions contemplated by the JVA were to be performed in Bangladesh. Defendants' unjust enrichment claim is not based on the JVA, however. Rather, it is based on a separate promise, implied in law, that Mr. Rahman would render to defendants funds which were wrongfully appropriated from them. Defendants assert that Mr. Rahman made false statements regarding the expenses incurred at the Project, causing defendants to transfer funds and services which unjustly enriched OML and Mr. Rahman. Washington State is closely linked with these events in that the requests for money were made to, and the disbursements were made from,

defendants in Seattle. Mr. Rahman engaged in significant forum-related activities which involved on-going financial dealings with residents of Washington. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222 (1957) (federal court in California can exercise personal jurisdiction over Texas company in suit based on a contract delivered to a California resident who thereafter mailed payments from that state). Mr. Rahman has the minimum contacts necessary for this Court to exercise specific jurisdiction over him with regards to defendants' unjust enrichment claim.

**2. Tort Claims**

The crux of defendants' tort claims is that Mr. Rahman intentionally and/or negligently misrepresented existing and future facts in order to lure defendants into the joint venture and to convert funds intended for the Project to his own use. Although the alleged misrepresentations regarding future events did not become actionable until Mr. Rahman failed to perform in Bangladesh, misstatements of existing fact were actionable when made to defendants in Seattle. For example, defendants assert that Mr. Rahman provided false information regarding his knowledge of governmental approval processes and falsely claimed that OML had incurred expenses on behalf of the Project.

The Court will assume, for purposes of this motion, that Mr. Rahman was located in Bangladesh when some, but not all, of the alleged misrepresentations of existing fact were made.[3] The Court may consider the effects of such foreign acts within Washington when determining whether Mr. Rahman purposefully availed himself of the benefits of this forum.

---

[3] To the extent that Mr. Rahman was actually within the forum state when he made actionable misrepresentations of existing fact, there is little doubt that such actions constitute the minimum contacts necessary to exercise personal jurisdiction over him. See Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997) (defendant must "do some act" within the forum *or* purposefully avail himself of the privilege of conducting activities there) (emphasis added). Even if Mr. Rahman was at all times acting as a representative or agent of plaintiff OML, officers and employees who commit tortious acts within the forum are not immune from local jurisdiction simply because they were acting on behalf of the corporate employer: if the employee's acts satisfy the minimum contacts requirement, there is no "fiduciary shield." Calder v. Jones, 465 U.S. 783, 789-90 (1984).

See, e.g., Calder v. Jones, 465 U.S. 783, 789 (1984). Under the effects test, jurisdiction can be exercised if defendants make a prima facie showing of "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered - and which the defendant knows is likely to be suffered - in the forum state." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (citing Core-Vent Corp. v. Nobel Ind. AB, 11 F.3d 1482, 1486 (9th Cir. 1993)). In this case, Mr. Rahman is accused of making intentional misrepresentations to defendants and converting defendants' funds without legal justification. The alleged fraud and scheme to convert funds were clearly aimed at defendants in Washington and Mr. Rahman knew that any harm arising from his conduct would be felt by defendants in Washington. Defendants have, therefore, established a prima facie case for specific jurisdiction over Mr. Rahman as to their fraud and conversion claims.

**3. Arising Out Of**

Defendants allege that they relied on Mr. Rahman's misrepresentations "when they decided to participate in the Project" (Counterclaim at ¶ 33), "continued to support the Project" (Counterclaim at ¶ 33), and "continued to expend their own funds in support of the Project" (Counterclaim at ¶ 36). To the extent the Court has found that Mr. Rahman had sufficient contacts with Washington to satisfy due process, defendants' fraud, conversion, and unjust enrichment claims arose out of those contacts.

Mr. Rahman argues that the losses for which defendants seek redress did not arise out of the alleged misrepresentations because defendants had already made up their mind "to proceed with the joint venture" in October 1997, before Mr. Rahman visited Seattle in November 1997. Decl. of Ashfaque Rahman at ¶ 7 (Dkt. # 34). This argument does not compel the conclusion that defendants' counterclaims arose out of something other than Mr. Rahman's representations. At best, Mr. Rahman's testimony creates a factual dispute regarding the cause of defendants' decision to participate in the joint venture. In the context of this motion to dismiss for lack of personal jurisdiction, however, the Court will presume that defendants will

be able to prove the facts set forth in their pleading unless those allegations are both challenged and unsupported. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). Here, defendants have provided testimony suggesting that the decision to participate in the Project had not yet been made in November 1997. See Decl. of Daniel Flynn at ¶5 (Dkt. # 40) (as of November 1997, defendants "had not yet decided to participate in the Project, but had decided to take the next step, which was further meetings between Mr. Rahman and our key decision makers in Seattle to discuss the specifics of the Project and to attempt to negotiate agreements between the parties.").[4] This factual dispute must, therefore, be resolved in favor of defendants. In addition, Mr. Rahman's argument does not address the counterclaims arising out of misrepresentations made after the parties entered into the JVA. Defendants have alleged that those misrepresentations caused them to continue to support the Project with services and funds until the Supreme Court of Bangladesh effectively stopped the approval process.

**4. Reasonableness**

Due process also requires that the federal court's assertion of jurisdiction over Mr. Rahman be reasonable.[5] Because the Court has found that Mr. Rahman purposefully availed himself of the privileges of conducting activities in Washington, personal jurisdiction in this district is presumed unless Mr. Rahman makes a compelling case to the contrary. Burger King,

---

[4] Mr. Rahman's motion to strike Mr. Flynn's testimony for lack of foundation and/or conclusory statements is DENIED. Mr. Flynn is the Executive Vice President of Strategic Development for defendant Carrix with responsibility for developing new projects such as the Bangladesh port facilities at issue here. For purposes of this motion, his position provides sufficient foundation for his testimony regarding defendants' decision-making process with regards to the Project.

[5] Under Ninth Circuit law, this prong of the personal jurisdiction analysis is the most important: "[j]urisdiction may be established with a lesser showing of minimum contacts if considerations of reasonableness dictate." Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1188 n.2 (9th Cir. 2002) (internal quotation marks omitted). There may, in fact, "be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." Brand v. Menlove Dodge, 796 F.2d 1070, 1074 (9th Cir. 1986).

471 U.S. at 477.

In determining whether the exercise of personal jurisdiction would comport with "fair play and substantial justice," the Court must consider seven factors:

> (1) the extent of [Mr. Rahman's] purposeful interjection into the forum state's affairs; (2) the burden on [Mr. Rahman] of defending in the forum; (3) the extent of conflict with the sovereignty of [Bangladesh]; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to [defendants'] interests in convenient and effective relief; and (7) the existence of an alternative forum.

Core-Vent, 11 F.3d at 1487-88. The Court finds that three of the seven factors strongly favor the exercise of jurisdiction, two of the factors cancel each other out, and two of the factors weakly support Mr. Rahman.

- As discussed above, Mr. Rahman initiated and promoted a long-term business relationship with Washington companies, communicated frequently with those companies in ways that gave rise to the counterclaims at issue, and traveled to Washington to further the on-going business relationship. The first factor favors defendants.
- Although Mr. Rahman is an individual, his significant ownership interests in OML, his frequent involvement in the operations of that company, his control over OML's relationship with defendants, his command of English, and his regular trips to the United States suggest that the burden of defending himself in this forum will not be too onerous. His anticipated involvement in the defense of OML on identical counterclaims makes the additional burden of defending himself minimal. Nevertheless, litigation in a foreign country is necessarily inconvenient, so the second factor slightly favors Mr. Rahman.
- The Court will assume that Bangladesh has an interest in regulating the conduct of one of its citizens. It is also safe to assume, however, that Washington

shares that interest insofar as the conduct affects Washington citizens.  Nor has Mr. Rahman submitted evidence, or even argued, that Washington law conflicts with Bangladeshi law in any material respect.  The competing interests of the possible forums cancel each other out.

- The most efficient forum for resolving defendants' counterclaims is Washington. OML, with Mr. Rahman at the helm, chose to sue defendants here in Washington for damages arising out of the failure of the JVA.  Defendants have asserted counterclaims against OML and it is undisputed that those counterclaims may and should proceed in this district.  The counterclaims asserted against Mr. Rahman are identical to those asserted against OML and will require the presentation of the same testimony and documents at trial.  The Court need not decide where the majority of the evidence is currently located: it will have to be collected or subpoenaed for presentation in this district when the counterclaims against OML are tried and it will be more efficient for the parties and the courts to present/hear the evidence in a single action.  The fifth and sixth factors strongly favor defendants.

- The Court will assume that the Bangladesh courts stand ready, willing, and able to hear defendants' fraud, misrepresentation, conversion, and unjust enrichment counterclaims.  The seventh factor favors Mr. Rahman.

Mr. Rahman has failed to present a compelling case of unreasonableness to defeat jurisdiction. Only two of the seven factors, burden on Mr. Rahman and alternate forum, favor Mr. Rahman. The first of the two is likely to favor any foreign litigant and the second is of little weight given the fact that there is an on-going related litigation already pending in this district.  After considering all of the factors, the Court concludes that the exercise of personal jurisdiction over Mr. Rahman is reasonable.

**5. Pendent Personal Jurisdiction**

Where jurisdiction will lie over one claim, "it may or may not be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction." Data Disc, 557 F.2d at 1288 n.8. The Court finds that exercising jurisdiction over all of defendants' claims against Mr. Rahman, including the negligent misrepresentation claim, will promote the interests of justice and the efficient use of the parties' and the Court's resources.

## MOTION TO STRIKE

In his reply memorandum, Mr. Rahman moved to strike certain evidence offered by defendants in opposition to the motion to dismiss. As discussed above in footnote 4, Mr. Flynn holds a position within defendants' corporate family that would enable him to testify regarding the state of defendants' decision-making process in late 1997. Neither he nor Mr. Watters has personal knowledge of statements made by the State Department or Transparency International, however. While testimony regarding the witnesses' personal beliefs and feelings regarding litigating in Bangladesh have been considered, the witnesses' quotations from and interpretations of third-party statements have not been considered. Mr. Watters' testimony regarding Mr. Rahman's linguistic skills and ties to the United States is relevant to assessing the burden that defending this litigation might impose. Mr. Rahman's objections to the testimony of Mr. Viola are denied.

## CONCLUSION

For all of the foregoing reasons, Mr. Rahman's motion to dismiss for lack of personal jurisdiction is DENIED. Mr. Rahman's motion to strike is GRANTED as to Messrs. Flynn and Watters' quotations from and interpretations of statements made by the United States Department of State and Transparency International.

DATED this 24th of April, 2006.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION – 12